**PROCESS GAS CONSUMERS GROUP
and American Iron and Steel
Institute, Petitioners,**

v.

**FEDERAL ENERGY REGULATORY
COMMISSION, Respondent,**

**National Fuel Gas Supply Corporation,
et al., Intervenors.**

Nos. 93–1405, 93–1739.

United States Court of Appeals,
District of Columbia Circuit.

Argued Sept. 11, 1998.

Decided Oct. 23, 1998.

John T. Miller, Jr. argued the cause for petitioners. With him on the briefs were Edward J. Grenier, Jr., and William H. Penniman. Sterling H. Smith entered an appearance.

John H. Conway, Deputy Solicitor, Federal Energy Regulatory Commission, argued the cause for respondent. With him on the brief were Jay L. Witkin, Solicitor, and Susan J. Court, Special Counsel.

Stanley W. Balis argued the cause for intervenors Municipal Defense Group and Texas Eastern Transmission Corporation. With him on the brief were Richard J. Kruse, Henry S. May, Jr., Judy M. Johnson and Catherine O'Harra. F. Nan Todd Wagoner entered an appearance.

Before: WILLIAMS, SENTELLE and ROGERS, Circuit Judges.

Opinion for the Court filed by Circuit Judge WILLIAMS.

STEPHEN F. WILLIAMS, Circuit Judge:

In Order No. 636, FERC exercised its authority under § 5 of the Natural Gas Act, 15 U.S.C. § 717d, to require that natural gas pipeline companies unbundle their gas transportation and sales services and file tariffs in compliance with the order.[1] The tariff filing at issue here provides that in the event of certain curtailments customers with specified emergency conditions can secure exemption from curtailment. This of course increases the curtailment of the pipeline's other customers, which would otherwise have been pro rata. The tariff also calls for some compen-

---

1. Order No. 636, "Pipeline Service Obligations and Revisions to Regulations Governing Self-Implementing Transportation; and Regulation of Natural Gas Pipelines After Partial Wellhead Decontrol," FERC Stats & Regs. (CCH) ¶ 30,939, 57 Fed.Reg. 13,267, *codified at* 18 CFR Part 284, *reh'g granted in part*, Order No. 636–A, FERC

Stats & Regs. (CCH) ¶ 30,950, 57 Fed.Reg. 36,-128, *reh'g denied*, Order No. 636–B, 61 FERC ¶ 61,272 (1992), *aff'd in part, rev'd in part, United Distribution Cos. v. FERC*, 88 F.3d 1105 (D.C.Cir. 1996), *on remand*, 78 FERC ¶ 61,186 (1997), *reh'g pending*.

sation to be paid by the exempted customers to the customers who are additionally deprived. But the petitioners argue that the compensation approved by the Commission is so limited that it gives customers inadequate incentives to plan ahead to reduce the likelihood and severity of gas-curtailment emergencies. As the Commission's explanation fails to come to grips with the petitioners' contentions, we remand the case for want of reasoned decisionmaking.

\*     \*     \*

Texas Eastern Transmission Corporation ("Tetco") made its compliance filing in 1992. The proposed tariff would have allowed Tetco to curtail service—even to "firm" transportation customers—in certain situations of force majeure or operational necessity. Such "capacity curtailment" was to be borne pro rata with two exceptions: first, to protect high-priority end-uses, as defined by §§ 401 and 402 of the Natural Gas Policy Act, 15 U.S.C. §§ 3391–92, and second, to provide gas to customers for "emergency" situations, defined as ones where gas was necessary "to avoid irreparable injury to life or property (including environmental emergencies) or to provide for minimum plant protection." Prompted by the comments of NUI Corporation (Elizabethtown Gas Division) ("NUI/Elizabethtown"), the Commission rejected Tetco's first proposed exception to pro rata curtailment, finding that the priorities in the NGPA did not apply to capacity curtailment. See *Texas Eastern Transmission Corp.*, 62 FERC ¶ 61,015 at 61,119 (1993). The Commission allowed the second exception, but required that Tetco's revised tariff "include compensation by the customer seeking the short term [emergency] exception to any other customer receiving more than its *pro rata* share of the capacity curtailment." *Id.* Tetco filed a revised tariff, including such a compensation measure, in February 1993.

The compensation provided, however, was quite limited. The tariff calls for increases in the exempted customer's bill by "the aggregate curtailment adjustment quantity requested by the Customer pursuant to [the emergency exemption] multiplied by the Reservation Charge Adjustment for the applica-

ble rate schedule per Dth [Dekatherm] for the applicable zone"; this amount is then distributed to the customers who were curtailed more than pro rata because of the exemption. As we understand this, it means that although the advantaged customers have already paid a reservation charge for their entitlement to transportation, they pay a premium, proportional to that charge, for the transportation they enjoy above pro rata curtailment levels by virtue of their emergency condition. The proceeds go to the more deprived customers, in proportion to their deprivation.

Despite the protests of NUI/Elizabethtown, The Process Gas Consumers Group, and The American Iron and Steel Institute (the latter two collectively "the Industrial Groups") that the compensation provided was inadequate, the Commission accepted Tetco's filing. See *Texas Eastern Transmission Corp.*, 63 FERC ¶ 61,100 (1993). Upon denial of their request for rehearing on this issue, see *Texas Eastern Transmission Corp.*, 64 FERC ¶ 61,305 (1993), NUI/Elizabethtown and the Industrial Groups petitioned for review in this court. See 15 U.S.C. § 717r.

\*     \*     \*

Petitioners objected below on two grounds. NUI/Elizabethtown argued that the compensation was inadequate, particularly for local distribution companies ("LDCs"). The increased curtailment for non-exempt customers removes these customers' regular access to part of their gas supply; this supply must be rerouted or replaced, often at a much higher cost. If no replacement can be found, the LDC customers lose the profit they would have made on the resale of the gas. NUI/Elizabethtown therefore proposed setting compensation either by these actual damage amounts (net replacement cost or lost margin) or by a "generic cost" calculated as "a stated percentage in excess of the spot gas price." The Industrial Groups raised an additional argument: that Tetco's compensation scheme gave bad incentives to its customers. Because an emergency exemption aids only customers without some backup capabilities of their own (such as "peak shav-

ing" facilities),[2] the low compensation rate allows these customers to free-ride on the costly contingency preparations of others. Between the grasshopper and the ant, in other words, Tetco's scheme favors the grasshopper and thus encourages his feckless ways. To correct this incentive problem, the Industrial Groups proposed compensation at "a predetermined amount that exceeds the cost of the most expensive gas sources or alternative fuels available to customers."

The Commission gave two reasons for rejecting these suggestions. First, the Commission pointed to the tariff's imbalance resolution procedures as an "adequate remed[y]" for the loss of gas supply. 63 FERC ¶ 61,100 at 61,496, 64 FERC ¶ 61,305 at 63,301. This seems to be a red herring. So far as appears, the imbalance procedures impose no cost on customers receiving emergency relief.

Second, the Commission claimed that "[n]o party has put forth a plausible compensation scheme that could be adequately monitored by the Commission." 64 FERC ¶ 61,305 at 63,301. But the Commission's two opinions say nothing to explain how any of the petitioners' proposals is either implausible or impractical to monitor. And, so far as concerns NUI/Elizabethtown's spot gas proposal, the Commission itself has in related contexts embraced a compensation device tied to the spot gas price: first in the very same proceeding, as the cash-out price used to resolve imbalances, see 62 FERC ¶ 61,015 at 61,116–17, and second, in a later case, as compensation paid by those enjoying an emergency exemption from gas supply curtailment, see *Transcontinental Gas Pipe Line Corp.*, 72 FERC ¶ 61,037 at 61,237–38 (1995). While we recognize that capacity curtailment and supply curtailment are not identical, see, e.g., *City of Mesa v. FERC*, 993 F.2d 888, 894–95 (D.C.Cir.1993), the Commission has nowhere explained why the differences render use of a spot-price solution inappropriate here. Cf. *Florida Gas Transmission Co.*, 70 FERC ¶ 61,017 at 61,063 (1995) (approving settlement providing capacity curtailment compensation based on alternative fuel cost). Nor, to repeat, has it

offered any explanation of the supposed deficiencies of the petitioners' other proposals.

If the Commission had grounds to reject petitioners' proposed alternatives, it has not revealed them. We accordingly remand the case for reconsideration.

*So ordered.*

---

**2.** Section 4.2(D)(4) of Tetco's tariff requires a customer seeking an exemption to attest that "no alternative fuel could be utilized or is available to be utilized to prevent the emergency situation."